# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

Re'shane Lonzo, Personal Representative
of the Estate of Richie Majors, Deceased,

      Plaintiff,

v.

Gerlach et al,

      Defendants,

Case No.: 2:16-cv-13672
District Judge: Mark A. Goldsmith
Magistrate Judge: David R. Grand

| RADNER LAW GROUP, PLLC | CHAPMAN LAW GROUP |
|---|---|
| Solomon Radner (P73653) | Ronald W. Chapman Sr., M.P.A., LL.M (P37603) |
| Attorney for Plaintiff | Devlin K. Scarber (P64532) |
| 17515 W. Nine Mile Rd. Suite 1175 | Attorneys for Defendants Savithri Kakani, P.A. and Thomas LaNore, P.A. |
| Southfield, MI 48075 | 1441 West Long Lake Rd., Suite 310 |
| (313) 355-3425 | Troy, MI 48098 |
| solomon@radnerlawgroup.com | (248) 644-6326 |
| | rchapman@chapmanlawgroup.com |
| | dscarber@chapmanlawgroup.com |

### DEFENDANTS SAVITHRI KAKANI, P.A. AND THOMAS LANORE, P.A.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO NAME MEDICAL EXPERTS

EXHIBIT B       Expert Report of Dr. Stolz (correctional medicine)

**Estate of Richie Majors (Fullove) v. Corizon et al**

Case No.: 2:16-cv-13672

May 24, 2018

**Final Report of Randall R. Stoltz, MD, CCHP**

I have relied upon the records provided from counsel to render an opinion on the complaints filed against Corizon et al. In addition, I reviewed the FDA approved package insert and patient information from Biogen Pharmaceuticals on Avonex.

1

## I. Expert Qualifications

Work experience:
    Private Family Medicine practice 1987-2005
    Vanderburgh County Corrections- Jail Medical Director -1998—present (CCHP)
    Warrick County Corrections-Jail Physician-2017--present
    Clinical research 1988-present
    Active surveyor for NCCHC for jails and prisons in USA 2014—present
    Member of the American College of Correctional Physicians
    Volunteer faculty member for Indiana University School of Medicine

Education:
    University Southern IN—BS Biology 1976-1980
    IN University School of Medicine—MD 1980-1984
    Family Medicine Residency—1984-1987 (board certified)
    Certification in Correctional Healthcare (CCHP)
    Certification as Principal Investigator in Clinical Trials (CPI)
    Annual surveyor training NCCHC for US jails and prisons
    Attendance at the annual NCCHC and American College of Correctional Physicians meetings

For further details, please see a copy of my attached *curriculum vitae*.

## II. Scope of Engagement:

I conducted a review of the complaint and a review of the numerous records provided by counsel. I formed my expert opinions on the merits of the complaints in this case based on my education, training and experience as well as the factual information documented.

## III. Materials Reviewed and Relied Upon to Make Findings, Reach Opinions, and Draw Conclusions:

Plaintiff's Complaint and Amended Complaint
Numerous Medical Records
Multiple Depositions
MDOC Disability Clinic Procedure
Staff Care Contract

2

Plaintiff's Institutional Records
Avonex drug information

## IV. Summary of Findings

After reviewing the above materials, I am summarizing the sequence of events and generalized facts as follows:

Mr. Major's had an initial intake screening evaluation done at the MDOC on 3/31/10 and at which time it was documented that he had the onset of Multiple Sclerosis (MS) in 1993 and that he was currently symptom free and stable. In addition, he had a mental health history and had been off Prozac for 1 ½ years. He also had a substance abuse/addition history with cocaine, alcohol, and marijuana. He was given accommodations for a bottom bunk on the lower floor.

He had a mental health evaluation on 4/8/10 and told the interviewer that he had loss of functioning, hands are numb, and can hardly hold a ball. He noted that he tires easily, has difficulty walking, and feels that his memory has significantly deteriorated in the past year due to his MS (which he reported then that his MS began in 2005). He complained of short term memory issues as well and his leg would often give out. He noted that he was on Interferon until 2008 when he stopped taking it, because his insurance did not cover it. He told the same social worker on 4/10/10 that he needed different shoes and a cane because of his MS.

A chart review was done by Dr. Gerlach on 5/18/10 and he did not feel that his MS was causing much trouble, thus medication, labs, or other evaluations were not needed at that time.

A Case Management appointment on 7/1/10 noted that his physical symptoms of MS have stayed the same.

An office note from Dr. Gerlach on 7/14/10 stated that he reviewed Mr. Major's MN DOC medical records and found that he was diagnosed with MS in 2005, not 1993 and that he had been on Interferon for some time without much change in his MS symptoms. He also took prednisone which had side effects and did not help much either. Dr. Gerlach did not think his MS symptoms were bad enough to warrant Interferon in the first place. Mr. Majors saw Dr. Gerlach again on 9/15/10 for a chronic care visit and it was felt that his MS was stable and no need for medication or special treatment at that time.

On 10/15/10 he was seen by the nurse for a complaint of his MS flaring in his feet. He was put on a short course of steroids which he told her had worked in the past. At a recheck visit on 10/18/10, he said that he had improved.

A nursing evaluation on 2/27/2011 noted that Mr. Majors was "unable to walk well and nausea" and "feels that his bones and muscles are stiff". On exam his gait was noted to be very unsteady, hand grips weak, and foot pushes on the left were stronger than the right. He was rechecked the next day and was in a wheelchair, but stated he was better than the day before. He was seen again on 3/1/11 for a recheck and was doing better. Hand grips were now strong and equal and his gait had improved.

Dr. Gerlach saw him on 5/25/11 for a chronic care visit for his MS and it was noted that he was feeling fine and his neurological exam was normal.

At a Case Management appointment on 7/14/11 he had not had any recurrence of his MS symptoms.

On 8/16/11 Mr. Majors put in a sick call request for a flare up of his MS. He saw Nurse Smith on 8/18/11 and she noted some weakness in his left lower extremity and referred him to see a provider. He saw Dr. Gerlach on 8/30/11 and by then his symptoms had resolved without treatment.

Dr. Santiago, the psychiatrist who was seeing Mr. Majors, noted that it is typical for his MS to have periods of relapsing and remitting, but most patients will eventually have some physical limitations. Mr. Majors had been followed frequently by the mental health staff for depression, insomnia, and group therapy.

Dr. Gerlach saw Mr. Majors on 12/5/11 for a chronic care visit and noted that his MS was stable with no neurological changes.

On 2/17/12 Mr. Majors noted intermittent visual disturbances to nurse Stouffer. On 2/22/12 Dr. Gerlach reviewed his chart and felt that no changes were needed at that time.

On 4/20/12 Mr. Majors reported to the therapist that his MS "is fine right now". However, on 4/27/12 he put a kite in for eye problems. He was seen in the eye clinic on 5/2/12 and eye glasses were ordered. A subsequent chronic care visit with Dr. Gerlach on 5/15/12 noted that his MS was stable and he was neurologically intact.

In early December 2012 Mr. Majors was transferred to a different facility. A chart review was done by PA Kakani on 12/8/12 and he was noted to have MS with no current medication orders.

Mr. Majors told mental health on 3/15/13 that he was not receiving healthcare service for his MS, but he had not initiated any requests.

On 5/21/13 he was seen for a chronic care visit by PA Kakani. He was not on medications for MS and stated that he "feels good, no issues".

Over the next year he put in numerous kites for constipation, skin, dental, sleep, and other issues and saw medical staff as well as saw mental health numerous times. He did not kite for his MS or complain about it flaring up to any of the providers he saw.

On 4/21/14 Mr. Majors put in a medical request for a MS flare in his legs and problems walking. On 5/4/14 he specifically put in a kite request to get on "Interferon beta 1A" for his MS. On 5/21/14 PA Kakani did a chart review and subsequently saw him on 5/30/14. He had no active MS symptoms at that time, but just wanted to discuss the medication. An exam was unremarkable that day.

4

In July 2014, Mr. Majors had an intra-system prison transfer. On 7/23/14 he put in a kite noting that he has not received any medication to slow the process of his MS disease (despite not having any recent symptoms noted in the medical record). On 8/8/14 He put in a kite to talk to medical about his MS. On 8/9/14 he put in another kite and this time he notes he is having "severe pain and difficulty walking". He was seen by RN Blohm on 8/10/14 and he was noted to have some trouble standing and some slurring to his speech. She referred him to see a provider. PA LaNore saw him on 8/12/14 at which time he stated that he had not seen much change in his MS since 2010. He did have some difficulty standing and walking that day.

On 8/13/14 he put in another kite for painful muscle spasms in his legs.

On 8/15/14 a past medical record review was done by PA LaNore, which pointed out a question from a prior neurologist about the true diagnosis of MS in Mr. Majors. Also, Mr. Majors requested to stop his therapy in 3/3/06 and again 7/9/06. Further records were needed at that time for diagnosis verification before any other therapy could be initiated.

On 8/21/14 Mr. Majors was noted to be very unsteady on his feet and subsequently a wheeled walker was issued. He was seen again 8/24/14 for follow up and instructions on self-care. He also put in multiple kites for sleep problems and was referred to mental health. On 8/26/14 he was seen by Dr. Howard for his MS. He was stable at that time. Past medical records requested were pending. He was seen again by RN Evertsen on 9/2/14 for difficulty ambulating and was issued a wheelchair for distance use. Another visit on 9/5/14 RN Blohm noted his speech was slurred and he had facial drooping. On 9/12/14 PA LaNore noted that a returned response stated there were no medical records from the dates requested in 2005 from Hennepin County Medical Center, thus Mr. Majors' case will be brought up at the next internal case meeting which may require a 407 to get diagnostic confirmation testing completed. On 9/17/14 he was again seen by PA LaNore for weakness and dizziness. An MRI of the brain and C spine was ordered and approved by Dr. Papendick. Also, on 9/19/14 a Prednisone (steroid) taper over 30 days was ordered to help with his symptoms. The 1st available MRI scheduling date was on 9/29/14.

On 9/22/14 RN Evertsen saw Mr. Majors for "not feeling right" with aches and pains as well as mental health issues. Education was provided. RN Evertsen saw him again on 9/26/14 and there was some improvement with him taking the Prednisone. Mr. Majors refused his optometry appointment on 9/29/14.

A brain MRI was done on 9/29/2014. On 10/1/14 a chart and MRI review by Dr. Worel confirmed demyelination consistent with MS and this was discussed with PA LaNore so further medication could be ordered. On 10/1/14 PA LaNore requested Rebif 22mcg injection two to three times weekly. Avonex was approved on 10/2/14 for once weekly injections. This was started on 10/7/2014.

5

**Note that information from the manufacturer of Avonex (interferon beta-1a) states that it is used to treat relapsing multiple sclerosis. This medication will not cure MS, it will only decrease the frequency of relapse symptoms.**

On 10/8/14 and 10/15/14 he was seen by medical for likely side effects of the Avonex injections with weakness and pain. He continued to receive weekly injections. On 12/9/14 he complained of muscle fatigue and pain. On 12/11/14 he had generalized weakness. On 12/17/14 Dr. Worel suggested that he be considered for transfer to a facility with higher level of individual care due to his gradual decline and no slowing of his deterioration with the Avonex. He was transferred on 12/30/14 to MDOC Duane Waters Hospital.

Mr. Majors slowly deteriorated with his MS over the next 18 months. He eventually passed away under hospice care at the Advantage Living Center Northwest on 6/19/2016.

Additionally, review of institutional records from 2013-2015 noted numerous misconduct violations from Mr. Majors including hoarding medication, harassing phone calls, and not following rules or officer's commands.

## V. Discussion and Conclusions

I have reviewed numerous materials/records in relation to this case. I have based my expert opinions on the merit of the complaints base on my education, training, and experience especially in correctional medicine. Management of Multiple Sclerosis (MS) is challenging since there is no known cure for this disease and it can vary in severity from patient to patient. It is my opinion with a reasonable degree of medical certainty that the MDOC medical staff evaluated and treated this patient appropriately based on his disease state at the different time frames and met the Standard of Care.

Mr. Majors/Fullove was apparently diagnosed with MS in 2005 and took Interferon injections for some time without much improvement in his MS symptoms. He stopped this on his own in 2008. He also had taken steroids without much improvement noted and he had side effects. He then came to MDOC on 3/31/10 not taking medications. He had numerous evaluations by the medical staff. He had periodic

6

exacerbations of his MS and early on recovered quickly and thus it was not felt that he needed to be back on Interferon (especially since it did not seem to help much before). He was seen by Dr. Gerlach in chronic care clinics and felt to be neurologically stable.

He was transferred out in December 2012 to a different facility. He did not put in any health service requests for his MS and was seen by PA Kakani on 5/21/13 with no complaints "feels good, no issues". It was not until almost a year later on 4/21/14 that Mr. Majors put in a health request regarding his MS and an appointment with the medical provider was set up. He wanted to discuss medications, despite no active symptoms.

In July 2014 he had an intra-system transfer and shortly thereafter he put in several kites regarding his MS. He did note then that his MS had not really changed much since 2010. He put in kites noting he wanted to talk about medication for MS. It was not until 8/9/14 that he placed a kite noting a flare up of his MS with "severe pain" and "difficulty walking". He was seen by Nurse Blohm the next day and was appropriately referred to the medical provider. PA LaNore saw him on 8/12/14. A record review on 8/15/14 noted past therapy, but all of the info was not available, thus a record request was placed. It was also noted in past records that Mr. Majors requested stopping his medications for MS twice in 2006.

There was difficulty in getting his past medical records to confirm his diagnosis, since there were questions noted on his actual diagnosis by a past neurologist. He began having worsening persistent symptoms, thus a request and approval for an MRI was received. He was started on steroids which helped some. Subsequently the MRI confirmed the MS and demyelination and then MS medication Avenox was approved for weekly injections and started 10/7/14. He was also given a wheelchair and a pusher for assistance. He then had apparent side effects from the medication over the next couple of months with weakness and pain. It was felt he needed a higher level of medical care and thus he was transferred out 12/30/14 to Duane Waters Hospital unit of MDOC.

Unfortunately, MS is a progressive disease despite medical treatment. Mr. Majors was seen many times by medical and mental health staff during his incarceration. His kites were responded to in a timely fashion. He had a tendency to put in multiple kites for the same issue prior to a scheduled provider visit. I feel with a reasonable degree of medical certainty that the medical and mental health staff responded appropriately to his medical needs.

Mr. Majors had a slowly progressive downhill course with his MS requiring increased assistance until his eventual death in June of 2016.

Once again, I would reiterate that based on my education, training, and experience, that Mr. Majors care was appropriate based on the facts that he entered the MDOC with his MS stable off medications and remained stable with brief flare ups until he started showing more progression at which time confirmatory brain MRI testing was done and he was subsequently started on the MS drug Avonex. He actually seemed to get worse on the drug and had side effects. His progressive worsening

7

Multiple Sclerosis could not be controlled, rather symptomatic and compassionate care was provided in advanced care units.

Respectfully submitted,

*[signature]*

Randall Stoltz, MD, CCHP

I charge $500 per hour for case reviews; $750 per hour for depositions (minimum 4 hours pre-paid); $750 per hour for trial testimony, plus expenses and inclusive of travel time. A list of my publications is provided on my curriculum vitae. I have testified twice by deposition (U.S. District Court Case No. 14-cv-07398 (NDIL) and Case No.: 4:15-CV-11019) as an expert and was certified as an expert by a judge at a Medical Licensing Board trial in Illinois within the last 4 years.